JOHN JOHNSON, Respondent, *v.* JOHN C. AUSTIN, Appellant.

*Contempt — bond to discharge a mechanic's lien signed by an obligor, insolvent when he makes the affidavit of justification — what proof is insufficient to establish that fact.*

Where a person who executed a bond to discharge a mechanic's lien is sought to be adjudged guilty of contempt because of his alleged insolvency at the time he executed the bond and the affidavit of justification, it is incumbent upon the moving party, in view of the fact that the proceeding operates to deprive the defendant of his right to a trial by jury, to show his insolvency at the time in question beyond a reasonable doubt, and also that he has been guilty of perjury.

What evidence, based upon schedules in bankruptcy filed by the defendant in voluntary bankruptcy proceedings instituted four years after he executed the bond, is insufficient to establish that he was then insolvent, considered.

APPEAL by the defendant, John C. Austin, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 1st day of August, 1902, adjudging the defendant guilty of contempt.

*George F. Alexander*, for the appellant.

*Theodore B. Gates*, for the respondent.

GOODRICH, P. J.:

The defendant Austin has been adjudged guilty of contempt on the ground that he executed a false and fraudulent bond in the sum of $600 to discharge a mechanic's lien on real property, and justified

in an affidavit in which he falsely swore that he was worth double the amount of the bond over and above all his debts and liabilities and exclusive of property exempt from execution.

The bond was dated in August, 1896. In September, 1900, Austin instituted proceedings for voluntary bankruptcy. The schedules showed debts amounting to over $46,000, and no assets. About $28,000 of the debts arose upon bonds secured by mortgage upon real estate, executed by him previously to the bond in this proceeding. There were equities in the real estate owned and valued by Austin at over $15,000. Some of the mortgages were foreclosed and some of the real estate was conveyed by Austin for cash or in payment of debts.

The schedules in bankruptcy show that the remainder of Austin's debts were contracted some time in 1896 and down to 1898. It does not appear that when the bond in suit was executed Johnson had any liabilities other than the bonds and mortgages. It was incumbent upon the plaintiff to show the insolvency of Austin when he gave the bond in suit, and this, it seems to me, he has failed to do. As this proceeding deprives Austin of trial by jury, the fact of his insolvency should be made to appear beyond a reasonable doubt, and also that he has been guilty of perjury. (*Norwood* v. *Ray Manufacturing Co.*, 11 Civ. Proc. Rep. 273.)

It has also been held that, as proceedings to punish a person for contempt in refusing to give evidence is, in its nature, an exception to the provisions of the Constitution and deprives a man of his liberty without a regular trial by jury, it cannot be extended in the least degree beyond the limits which have been imposed by statute. (*Rutherford* v. *Holmes*, 5 Hun, 317; affd., 66 N. Y. 368.) This reasoning is equally applicable to the present proceeding.

The language of the court in *Nathans* v. *Hope* (N. Y. Court of Appeals Reports [Rev. ed.], book 20, p. 993) seems peculiarly applicable to the case at bar: "The fact that some years after Satterlee became insolvent, does not disprove his uncontradicted evidence of his solvency when the undertaking was executed. He was engaged in a hazardous business, and some of his debtors in 1878 subsequently became insolvent. We think the facts disclosed did not justify a finding that Satterlee falsely swore to the affidavit of justification. For this reason, and without considering any other

question, the orders of the General and Special Terms should be reversed."

I do not think it is established by the plaintiff's affidavits used on the motion that Austin was insolvent when he executed the bond, much less that he knew that to be the fact. Indeed, so far as the evidence shows, he was not insolvent.

The order should be reversed.

All concurred.

Order reversed, with ten dollars costs and disbursements.